SCHEDULED FOR ORAL ARGUMENT ON JANUARY 13, 2026

No. 25-7050

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

JARED FISHMAN,
APPELLEE,

v.

DISTRICT OF COLUMBIA, *et al.*,
APPELLANTS.

ON APPEAL FROM AN ORDER OF THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**REPLY BRIEF FOR APPELLANTS**

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CAROLINE S. VAN ZILE
Solicitor General

ASHWIN P. PHATAK
Principal Deputy Solicitor General

GRAHAM E. PHILLIPS
Deputy Solicitor General

LUCY E. PITTMAN
Senior Assistant Attorney General
Office of the Solicitor General

Office of the Attorney General
400 6th Street, NW, Suite 8100
Washington, D.C. 20001
(202) 727-3881
lucy.pittman@dc.gov

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

A. *Parties and amici*.—Jared Fishman was the plaintiff below and is the appellee here.  The District of Columbia, Lieutenant Patrick Loftus, and Officers Marck Jaeger, Jeremy Brady, Michael Tong, and Christopher Todaro were the defendants below and are appellants here.  There are no amici.

B. *Ruling under review*.—The ruling of the district court under review is the March 13, 2025 Memorandum Opinion and Order (ECF Nos. 59 and 60), entered by U.S. District Court Judge Richard J. Leon.  The decision is not reported but is available at 2025 WL 819579.

C. *Related cases*.—This case has not previously been before this Court or any other court.  Undersigned counsel is unaware of any related case.

## TABLE OF CONTENTS

SUMMARY OF ARGUMENT ................................................................................1

ARGUMENT ....................................................................................................5

    I.    The Officers Argued Below That They Had Reasonable Suspicion To Believe Fishman Committed A Crime Other Than Kidnapping ................................................................................5

    II.    The District Court Erred In Denying Summary Judgment For The Officers On The Fourth Amendment Claims ............................12

        A.    Throughout the investigation there was reasonable suspicion (Count III) or probable cause (Count IV) to believe that Fishman had committed a crime ..........................12

        B.    At minimum, the officers were entitled to qualified immunity (Counts III and IV) ....................................................19

    III.    The Common Law False Imprisonment Claim Fails For The Same Reasons As The Fourth Amendment Claims (Count VI) .........22

CONCLUSION ..................................................................................................27

# TABLE OF AUTHORITIES*

*Cases*

*Amobi v. D.C. Dep't of Corr.*, 755 F.3d 980 (D.C. Cir. 2014) ............................... 16

*Anderson v. Creighton*, 483 U.S. 635 (1987) ..................................................... 20-21

*Barham v. Ramsey*, 434 F.3d 565 (D.C. Cir. 2006) .......................................... 20, 21

*Bradshaw v. District of Columbia*, 43 A.3d 318 (D.C. 2012) .............................. 26

*Devenpeck v. Alford*, 543 U.S. 146 (2004) ............................................................. 7

*District of Columbia v. Minor*, 740 A.2d 523 (D.C. 1999) ................................... 26

*District of Columbia v. Murphy*, 631 A.2d 34 (D.C. 1993)................................... 26

*District of Columbia v. Wesby*, 583 U.S. 48 (2018) ................................. 16, 17, 21

*Doe v. Gates*, 981 F.2d 1316 (D.C. Cir. 1993) ..................................................... 11

*Dukore v. District of Columbia*, 799 F.3d 1137 (D.C. Cir. 2015)......................... 19

*Est. of Parsons v. Palestinian Auth.*, 651 F.3d 118 (D.C. Cir. 2011)................ 9, 10

*Florence v. United States*, 906 A.2d 889 (D.C. 2006)....................................... 18-19

*Illinois v. Gates*, 462 U.S. 213 (1983) ................................................................... 17

*Greenlaw v. United States*, 554 U.S. 237 (2008)................................................... 23

*Herrera v. Command Sec. Corp.*, 837 F.3d 979 (9th Cir. 2016) ........................... 11

*Herron v. Fannie Mae*, 861 F.3d 160 (D.C. Cir. 2017)......................................... 19

*Hunter v. Bryant*, 502 U.S. 224 (1991)............................................................. 21-22

*Illinois v. Wardlow*, 528 U.S. 119 (2000)........................................................ 5, 6, 7

---

\*     Authorities upon which we chiefly rely are marked with asterisks.

*Liberty Lobby, Inc. v. Rees*, 852 F.2d 595 (D.C. Cir. 1988) ................................... 11

*Malley v. Briggs*, 475 U.S. 335 (1986) ........................................................... 21-22

*Maryland v. Pringle*, 540 U.S. 366 (2003) ............................................................ 17

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ........................................................ 11-12

*NRM Corp. v. Hercules, Inc.*, 758 F.2d 676 (D.C. Cir. 1985) .................................. 9

*Ohio v. Robinette*, 519 U.S. 33 (1996) ................................................................ 20

*Ornelas v. United States*, 517 U.S. 690 (1996) ..................................................... 16

*Plumhoff v. Rickard*, 572 U.S. 765 (2014) .................................................... 16, 20

*Potter v. District of Columbia*, 558 F.3d 542 (D.C. Cir. 2009) .......................... 9, 10

*Rivas-Villegas v. Cortesluna*, 595 U.S. 1 (2021) ................................................. 19

*Scott v. District of Columbia*, 101 F.3d 748 (D.C. Cir. 1996) ........................... 25-26

*Shatsky v. Pal. Liberation Org.*, 955 F.3d 1016 (D.C. Cir. 2020) ........................ 23

*Terry v. Ohio*, 392 U.S. 1 (1968) ......................................................................... 7

*United States v. Arvizu*, 534 U.S. 266 (2002) ...................................................... 17

*United States v. Burnett*, 827 F.3d 1108 (D.C. Cir. 2016) ...................................... 14

*United States v. Gen. Motors Corp.*, 518 F.2d 420 (D.C. Cir. 1975) ..................... 11

*United States v. Hawkins*, 595 F.2d 751 (D.C. Cir. 1978) ..................................... 15

*United States v. Hill*, 131 F.3d 1056 (D.C. Cir. 1997) ........................................... 7

*United States v. Pack*, 622 F.3d 383 (5th Cir. 2010) .............................................. 7

*United States v. Roper*, 63 F.4th 473 (5th Cir. 2023) ............................................. 7

*United States v. Smart*, 91 F.4th 214 (4th Cir. 2024) ............................................. 7

*Wilson v. Layne*, 526 U.S. 603 (1999) ................................................................... 19

*Woodruff v. Peters*, 482 F.3d 521 (D.C. Cir. 2007) ................................................. 6

*Yee v. City of Escondido*, 503 U.S. 519 (1992) ...................................................... 6

## *Statutes and Regulations*

D.C. Code § 22-404 ............................................................................................ 10

D.C. Code § 22-1101 ........................................................................................... 10

## *Rules*

Fed. R. Civ. Proc. Rule 56 .................................................................................9, 11

## GLOSSARY

| | |
|---|---|
| D.C. Br. | Appellants' Opening Brief |
| Ex. | Exhibit |
| Fishman Br. | Appellee's Brief |
| JA | Joint Appendix |
| MPD | Metropolitan Police Department |

## SUMMARY OF ARGUMENT

1.     Officers detained plaintiff Jared Fishman for 25 minutes while investigating a credible report of possible kidnapping or child abuse.  As the officers explained in their opening brief, reasonable suspicion of kidnapping, cruelty to children, and assault justified the initial stop, and reasonable suspicion of cruelty to children and assault remained throughout the stop.  Fishman's first argument is that the officers forfeited below any reliance on crimes other than kidnapping.  But the record shows otherwise—as Fishman concedes several times.  The officers were clear in their summary judgment motion that this case is not about kidnapping alone because the facts support suspicion of child abuse.  And the statements of material facts amply asserted the factual support undergirding reasonable suspicion of cruelty to children and assault.  While the officers may have *primarily* focused on kidnapping below, a shift in emphasis is not a forfeiture.

Fishman's other arguments for forfeiture lack merit.  He is wrong, for instance, that reasonable suspicion is tied to a specific crime under investigation. Officers need not identify a specific crime they are investigating when conducting a stop; they need only maintain suspicion that criminal activity is afoot.  And contrary to Fishman's claim, the factual support for suspecting cruelty to children and assault was set forth below, even if the officers did not specifically identify those crimes in deposition testimony.  Fishman cannot credibly claim any unfairness where he

concedes that the relevant facts, captured on body-worn camera footage, are undisputed. Tellingly, Fishman has not identified any new fact or factual dispute on appeal.

Ultimately, this Court reviews summary judgment de novo. The full record is before the Court, and Fishman has had a full opportunity to argue the significance of the undisputed facts. Under the relevant standard, this Court is well within its authority to reverse the district court and direct entry of judgment for the officers.

2. a. The facts known to the officers throughout the investigation—including a radio report based on a 911 call by an eyewitness who saw Fishman grab a little girl, throw her over his shoulder, and throw her into a car—would give an objectively reasonable police officer ample basis to suspect that Fishman had committed second-degree cruelty to children or assault. Ignoring these facts, Fishman seeks to defeat an argument the officers did not make: that the collective knowledge doctrine may be used retroactively to justify a stop or arrest. But the officers can prevail without any application of the collective knowledge doctrine because the 911 radio report alone is sufficient to establish reasonable suspicion of child abuse. Anyway, Fishman does not dispute that this Court has recognized and applied the collective knowledge doctrine when officers are working together to carry out a stop. He focuses on the lack of record evidence that Lieutenant Loftus shared the information he heard from the 911 caller with the other officers. But Fishman does not explain

2

how that undermines collective knowledge where the information Lieutenant Loftus learned only matched the report the officers received.  Fishman concedes that this type of collective knowledge is "uncontroversial" when a senior officer, such as Lieutenant Loftus, knows the facts and is directing the officers' conduct.

Turning to the arguments raised by the officers, Fishman argues that reasonable suspicion for child abuse dissipated within the first few minutes of the stop.  His argument has two flaws.  *First*, Fishman asks this Court to assess reasonable suspicion from *his* perspective rather than that of the officers.  That ignores Fourth Amendment law.  A suspect's claim of innocence does not negate probable cause or reasonable suspicion where other facts known to the officers point the other way.  *Second*, Fishman ignores the totality of the circumstances, which includes the report from the 911 caller, and focuses on his older daughter's statement that he had done nothing wrong.  Again, this contradicts well-established Fourth Amendment law, which does not allow Fishman's approach of giving dispositive weight to particular facts in isolation.

b.  But even if the facts known to the officers fell short of creating reasonable suspicion or probable cause, the officers are entitled to qualified immunity.  Fishman bears the burden of identifying a case with a similar factual pattern that would have put the officers on notice that their conduct was unlawful.  As below, he fails to identify one on appeal.  Instead, contrary to clear directives from the Supreme Court,

3

he defines the particular right at far too high a level of generality—that officers must have a reason to justify the stop. In any event, even at that high level, Fishman's argument fails because the officers had reasons to detain him. They were investigating a 911 report that Fishman was seen committing an act of possible child abuse. Even if the officers were wrong under the Fourth Amendment, their actions were not *clearly* wrong, and they are entitled to immunity.

3. Fishman concedes that the district court incorrectly entered judgment against Officer Todaro on the common law false arrest claim, and instead seeks judgment against the District on this claim. This Court should deny his request because it was not raised below and also violates the cross-appeal rule.

On the merits, Fishman's claim against the District relies on Officer Todaro's actions only. He claims that in the first few minutes of the stop, Officer Todaro could not have believed that there was reasonable suspicion for kidnapping, the crime Officer Todaro identified in his deposition testimony. But the record shows that reasonable suspicion for kidnapping did not even arguably dissipate until more than ten minutes into the stop. Officers had not confirmed the identities and relationships of the adults or children, so general and parental kidnapping remained possible crimes. And even if Officer Todaro were mistaken, there is no liability where he had a good-faith belief that his conduct was lawful and his belief was reasonable. The latter element matches the qualified immunity analysis. For the

former, the facts known to Officer Todaro fully support his "good faith belief" that there was reasonable suspicion or probable cause for kidnapping.

## ARGUMENT

**I.    The Officers Argued Below That They Had Reasonable Suspicion To Believe Fishman Committed A Crime Other Than Kidnapping.**

Under the Fourth Amendment, a police officer may "conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).  As their opening brief explains, the officers' detention of Fishman was justified at the outset by facts creating reasonable suspicion of kidnapping, cruelty to children, and assault—and even if reasonable suspicion of kidnapping dissipated at some point, suspicion of the latter two crimes did not.  D.C. Br. 28-34.  Fishman now contends, as his primary argument, that the officers forfeited this reliance on crimes other than kidnapping.  Fishman Br. 21-27.  That is incorrect.

In their summary judgment filings, the officers were crystal clear that they were not relying on kidnapping alone.  "[Fishman] veers off course," they noted, "when making his case that kidnapping is the only relevant crime separate and apart from child abuse."  Joint Appendix (JA) 308.  They repeatedly highlighted that the facts known to the officers supported suspicion of *either* kidnapping *or* child abuse, JA 305, 308-09, 391, 395-96, and specifically cited the cruelty-to-children statute, JA 309.  To be sure, the officers' arguments below focused *more* on kidnapping than

child abuse, but a shift in emphasis is not a forfeiture. "Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *Woodruff v. Peters*, 482 F.3d 521, 525 (D.C. Cir. 2007) (quoting *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992)).

Fishman's attempt to argue otherwise is refuted by the record, as he is forced to concede several times. He acknowledges that Officer Todaro disputed that kidnapping was the only crime under investigation, Fishman Br. 23; that Officer Todaro's opposition to his summary judgment motion referred to child abuse, neglect, and cruelty to children, Fishman Br. 25-26; that the officers' motion referred to investigating child abuse, Fishman Br. 30; and that Officer Brady testified that abuse was one of the crimes they were investigating, Fishman Br. 31. Nonetheless, Fishman argues that the officers forfeited the argument that there was reasonable suspicion or probable cause for anything but kidnapping, claiming the statements of material facts did not identify the crimes the officers were investigating with citations to the record. Fishman Br. 23-24, 28-30. This argument is unsupported by law and the record.

On the law, officers are not required to identify the specific crime they are investigating when conducting a stop. As noted, an officer may stop a suspect when he has "reasonable, articulable suspicion that criminal activity is afoot." *Wardlow*,

6

528 U.S. at 123. In *Wardlow*, the officers had reasonable suspicion to stop a suspect based on his "unprovoked flight" in a "high crime area." *Id*. at 124-25. The Court described the officers as having suspicion of "wrongdoing" or "criminal activities" rather than of any specific crime. *Id*. at 124-25. This "low bar" of suspicion of wrongdoing, *United States v. Smart*, 91 F.4th 214, 223 (4th Cir. 2024), makes good sense, as an *investigatory* stop allows officers to *investigate* whether a crime occurred. *See United States v. Roper*, 63 F.4th 473, 478 (5th Cir. 2023) ("*Terry* [*v. Ohio*, 392 U.S. 1 (1968),] does not require officers to have a 'particularized suspicion of a particular, specific crime.'" (quoting *United States v. Pack*, 622 F.3d 383, 383 (5th Cir. 2010))).

Moreover, as explained in the opening brief (at 47), and conceded by Fishman (at 31-32), an officer's *subjective* view of what crimes are under investigation is irrelevant. An officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). Even if an officer later testifies that he detained an individual on suspicion of Crime A only, if the facts known to the officer justified reasonably suspecting the person of Crime B, that suffices to render the detention constitutional. *See United States v. Hill*, 131 F.3d 1056, 1059-60 (D.C. Cir. 1997). Thus, insofar as Fishman suggests that the officers forfeited their arguments through their deposition testimony, *see, e.g.*, Fishman Br. 28, he is mistaken.

7

Relatedly, Fishman also ignores the key requirement of the statement of material facts: that it consists of *facts*, not legal argument.  The officers were not required in the statement of facts to assert that they had reasonable suspicion for any particular crime; rather, they were required to state the *facts* that would support such reasonable suspicion.  They did that, with citations to the record.  *See, e.g.*, JA 229 (No. 2: "As Officer Todaro approached the home, he believed he had reasonable suspicion to believe a kidnapping had occurred because he had been told that a 9-1-1 caller had described a man matching Fishman's description *throwing a small child into a car* registered to Fishman's address." (emphasis added)), 291-92 (No. 4: "The witness told emergency services, 'I don't know if it was an abduction, or a father manhandling his child in a really bad way . . . I saw this guy pull up [and jumped out of his car and] tried to talk to her, then he started screaming at her, and she pushed him, and he just grabbed her, threw her over his shoulder, and just threw her into the car.").[1]

In any event, the factual statements also demonstrated that the officers in fact believed they were investigating more than kidnapping.  JA 235 (No. 28: "Sergeant Bray told Fishman that the only thing that officers needed to confirm before Fishman could be uncuffed was that 'the child [meaning J.M.-F.] *is OK*, and is yours.'"

---

[1]      Fishman disputed fact No. 4 because of a transcription error, JA 374, which has been fixed above through the addition of the bracketed phrase.

(brackets in original) (emphasis added)), 294 (No. 19: "Determining the relationship of the parties involved was but one aspect of the inquiry and the investigation did not cease when officers learned that the alleged victim was the Plaintiff's daughter."), 294 (No. 20: "The officers insisted that they needed to speak with the alleged kidnapping victim herself."), 294 (No. 21: "The girl told Officer Brady that she had fought with her older sister, ran from the car, and was picked up by her father. She stated that she was not hurt and that her father had picked her up gently.").[2]

The crux of Fishman's argument is a misunderstanding of how forfeiture applies under Federal Rule of Civil Procedure 56. "[A] party may not seek to overturn the grant of summary judgment by alleging unresolved factual *disputes* not previously presented to the trial court." *NRM Corp. v. Hercules, Inc.*, 758 F.2d 676, 680 (D.C. Cir. 1985) (emphasis added). But as Fishman concedes, "[n]early all the relevant events in this case were captured on [Metropolitan Police Department (MPD)] officers' body-worn cameras, and so they are not in any factual dispute." Fishman Br. 2. Nor is Fishman's reliance on *Potter v. District of Columbia*, 558 F.3d 542 (D.C. Cir. 2009), and *Estate of Parsons v. Palestinian Authority*, 651 F.3d 118 (D.C. Cir. 2011) (Tatel, J., concurring), persuasive here. *See* Fishman Br. 23,

---

[2]    Fishman disputed Nos. 19 and 20, but did not identify a factual dispute. He merely disputed what these facts may "suggest[]." JA 379.

33-34.  In *Potter*, the Court disallowed reliance on a factual dispute not raised below. 558 F.3d at 549.  And in *Parsons*, the concurring opinion criticized a party for using an evidentiary theory in defense of a claim that was not raised below.  651 F.3d at 137.  Neither situation exists here.  Fishman points to no new fact or factual dispute on appeal, defeating any suggestion that finding forfeiture is needed to ensure "fairness."  Fishman Br. 33-34.  And there is no new evidentiary theory; the officers have consistently defended this action based on reasonable suspicion and probable cause.

Perhaps recognizing that the officers preserved the issue for appeal, Fishman complains that the officers referred to "child abuse" and a "domestic dispute," noting the former is not a crime and the latter is irrelevant.  Fishman Br. 26.  But these complaints misunderstand that in the real world, nontechnical terms are used to describe categories of offenses.  For example, officers may say that they are investigating a *fight* rather than an assault or aggravated assault.  Here, "child abuse" and "domestic dispute" are terms used to describe a category of intra-family offenses, such as when a father throws a child into a car.  When charged, those offenses may include cruelty to children, D.C. Code § 22-1101, or assault, *id.* § 22-404.

Finally, even if the references below to crimes other than kidnapping were considered underdeveloped, Fishman has not been prejudiced.  The full record is

before this Court, and Fishman has had ample opportunity to argue the legal significance of those facts. The "grant or denial of summary judgment is a determination of law rather than one of fact," and this Court does not "defer to the district court's conclusions" but "review[s] the matter de novo." *Liberty Lobby, Inc. v. Rees*, 852 F.2d 595, 598 (D.C. Cir. 1988). It decides the "same question that was before the [d]istrict [c]ourt," "whether there is on the record 'no genuine issue as to any material fact'" and "[i]f so, then . . . whether 'the moving party is entitled to a judgment as a matter of law,'" *Doe v. Gates*, 981 F.2d 1316, 1322 (D.C. Cir. 1993) (quoting Fed. R. Civ. Proc. Rule 56(c)).

De novo review also conflicts with Fishman's suggestion that granting the officers summary judgment is "extreme." Fishman Br. 33. This Court is well within its authority, when the record is "sufficiently developed through the parties' cross-motions and briefs on appeal," to "direct the district court to grant an appellant's cross-motion for summary judgment." *Herrera v. Command Sec. Corp.*, 837 F.3d 979, 985 (9th Cir. 2016) (citation modified). Rule 56 allows courts to "eliminate[] useless trials." *United States v. Gen. Motors Corp.*, 518 F.2d 420, 441 (D.C. Cir. 1975). It is especially important to exercise this authority when the district court improperly denies qualified immunity because "[t]he entitlement is an *immunity from suit* rather than a mere defense to liability[,]" which "is effectively lost if a case

11

is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

## II. The District Court Erred In Denying Summary Judgment For The Officers On The Fourth Amendment Claims.

### A. Throughout the investigation there was reasonable suspicion (Count III) or probable cause (Count IV) to believe that Fishman had committed a crime.

1. As detailed in the opening brief, the facts known to the officers throughout the investigation would give an objectively reasonable police officer ample basis to suspect that Fishman had committed second-degree cruelty to children or assault. A reliable eyewitness reported that Fishman "grabbed" a "little girl," "threw her over his shoulder," and "threw her into the car." Exhibit (Ex.) 6 at 00:30 to 00:35, 00:50 to 01:00. This information was shared with the officers via radio before arriving at Fishman's home and was enough to create reasonable suspicion to justify an investigatory stop or, once officers confirmed Fishman was the suspect, probable cause to justify an arrest. JA 326, 334.

The answers eventually provided by Fishman and his daughters during the investigation did not dispel reasonable suspicion or probable cause. Fishman and his older daughter, A.M.-F., confirmed that an incident occurred where Fishman's "pain in the ass child [J.M.-F.]," Ex. 4 at 20:05:15 to 20:05:20, was "being a shit," Ex. 3 at 19:46:40 to 19:46:50, and Fishman became "angry" and "frustrated," Ex. 5 at 14:46:19 to 14:46:28, "put her over his shoulder," and put her into the car, Ex. 5

12

at 14:41:50 to 14:41:59. A reasonable officer—looking at the whole picture, including the 911 call—could believe that Fishman had been angry enough to physically throw J.M.-F. into the car, as the eyewitness reported, Ex. 6 at 00:50 to 01:00, and that Fishman and his daughter were downplaying the incident.

Fishman's response brief does not address the facts known to the officers, and instead devotes ten pages to addressing an argument the officers did not make: that the collective knowledge doctrine may be used "retroactively" to "justify a stop or arrest on the basis of information those officers did not actually have at the time." Fishman Br. 35-36; *see* Fishman Br. 34-44. Fishman begins this argument with an erroneous suggestion that the officers did not know the relevant content of the 911 call. Fishman Br. 34. The record shows otherwise. Officer Jaeger testified that the report over the radio was: "a call for a kidnapping . . . an older white male who's balding had grabbed a girl, threw her over his shoulder, and threw her into a car, and drove off." JA 334. Officer Todaro likewise testified he was told that a "small child was thrown into a green Audi SUV." JA 326. Thus, officers arrived at Fishman's home with suspicion of someone throwing a child without having to rely on any collective knowledge.

To be sure, the officers referred to the collective knowledge doctrine in their opening brief (at 27), describing the law of reasonable suspicion. But Fishman has not shown that the reference is an incorrect statement of the law. Nor could he. The

collective knowledge doctrine applies to reasonable suspicion and probable cause determinations. *United States v. Burnett*, 827 F.3d 1108, 1114 (D.C. Cir. 2016). Nor does Fishman challenge the references to the officers "collectively" maintaining reasonable suspicion or probable cause throughout the stop. D.C. Br. 28, 48. Indeed, Fishman recognizes that there is support for applying the doctrine when officers work together to carry out the stop. Fishman Br. 43 (citing cases).

Instead, Fishman focuses on Lieutenant Loftus's interview with the 911 caller, who told him more about Fishman's "not normal" behavior. Ex. 1 at 19:43:29 to 19:43:52. The 911 caller explained that if Fishman's conduct was not "an abduction[,] it was child abuse," Ex. 1 at 19:44:00 to 19:44:05, and that "[n]o dad should be manhandling his daughter and throwing her in the car . . . she is trying to jump out the other side . . . for a six- or seven-year-old . . . it was just not right," Ex. 1 at 19:44:04 to 19:44:20. Fishman does not argue that this information fails to support both reasonable suspicion and probable cause. Instead, he argues that there is no record evidence that Lieutenant Loftus shared these statements with the officers at O Street. Fishman Br. 38. But again, the officers would have had reasonable suspicion even putting aside the information that Lieutenant Loftus obtained in his interview with the eyewitness. The 911 radio report on its own supports a finding of reasonable suspicion for child abuse.

Anyway, contrary to Fishman's argument, the collective knowledge doctrine allowed all the officers to rely on the information known to Lieutenant Loftus. As this Court explained in *United States v. Hawkins*, 595 F.2d 751 (D.C. Cir. 1978), "probable cause may emanate from the collective knowledge of the police, though the officer who performs the act of arresting or searching may be far less informed." *Id.* at 752 n.2. The officer in *Hawkins* who initiated the search had been communicating with the other officers and "was aware of the possible involvement of the car in drug dealings." *Id.* Likewise, the officers at O Street knew of the possibility that Fishman had assaulted J.M.-F. because they were responding to a report that he had grabbed and thrown her into a car. Lieutenant Loftus had been in contact with those officers and knew that they were investigating. Ex. 1 at 19:46:46 to 19:47:33. Tellingly, he did not order the officers to end the stop nor did he direct new areas of inquiry, because the information he learned matched the 911 report. When he arrived at O Street, he approved the officers' actions to continue the investigation until they were able to "verify that the kid is okay" and to "make sure [she had] no injuries." Ex. 4 at 20:00:34 to 20:0040; *see* Ex. 5 at 15:04:30 to 15:05:14 (Officer Brady asking J.M.-F. whether she was hurt); *see also* Ex. 8 at 20:06:24 to 20:06:58 (after verifying J.M.-F. had been seen and appeared unharmed, Lieutenant Loftus explained that for "right now" the officers were "done here"). Under these facts, the collective knowledge doctrine unquestionably applies.

Indeed, Fishman does not dispute that collective knowledge applies when a senior officer has personal knowledge of the facts and is directing the officers' conduct. Fishman Br. 36 (calling this the "uncontroversial form of collective knowledge"). This Court need not delve into whether it applies in other circumstances not presented by this appeal.

2. When Fishman finally turns to the facts, he argues that reasonable suspicion for child abuse dissipated during the "initial minutes of [the officers'] investigation." Fishman Br. 44. From Fishman's perspective, the officers could no longer believe the 911 caller that he "threw [a little girl] over his shoulder" and "threw her into the car" after A.M.-F. "calm[ly]" told officers an "explanation of the relevant events." Fishman Br. 46. But this argument fails for two reasons.

*First*, Fishman fails to apply the principle that reasonable suspicion and probable cause are assessed from the perspective of *the officers*. *See, e.g.*, *Ornelas v. United States*, 517 U.S. 690, 696 (1996); *Plumhoff v. Rickard*, 572 U.S. 765, 775 (2014). Fishman asks this Court to instead look at the facts from the perspective of the *suspect*. From *Fishman's* perspective, this incident involved merely "putting a recalcitrant child into a car . . . after that child has tried to run away on a busy street." Fishman Br. 49. But as this Court and the Supreme Court have said, a suspect's claim of innocence does not negate probable cause or reasonable suspicion. *See Amobi v. D.C. Dep't of Corr.*, 755 F.3d 980, 990 (D.C. Cir. 2014); *District of*

16

*Columbia v. Wesby*, 583 U.S. 48, 61 (2018) ("[P]robable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts."). Fishman has nothing to say about the facts from the officers' perspective. Indeed, he never disputes that a report that a child had been "grabbed" off the street and "thrown into a car" was enough to create reasonable suspicion of second-degree cruelty to children and assault. *See* D.C. Br. 28-31.

*Second*, Fishman fails to consider the totality of the circumstances. He asks this Court to treat as dispositive A.M.-F.'s statements that "my dad had to put [J.M.-F.] over his shoulder and bring her into the car," Ex. 5 at 14:41:50 to 14:41:59, and "[h]e did nothing wrong," Ex. 5 at 14:41:57 to 14:41:59. But neither reasonable suspicion nor probable cause allows Fishman's approach of viewing "each fact 'in isolation, rather than as a factor in the totality of the circumstances.'" *Wesby*, 583 U.S. at 60 (quoting *Maryland v. Pringle*, 540 U.S. 366, 372 n.2 (2003)); *see United States v. Arvizu*, 534 U.S. 266, 274 (2002) (rejecting a "divide-and-conquer analysis"). A.M.-F.'s seemingly innocent statements must be viewed as only one part of the "whole picture," *Wesby*, 583 U.S. at 60, which included the 911 report that Fishman grabbed J.M.-F. and threw her, Ex. 6 at 00:50 to 01:00; *see Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983) ("[S]eemingly innocent activity became suspicious in the light of the initial tip.").

Moreover, a child's protestation of her father's innocence does not overcome the probable cause or reasonable suspicion established by a report from a reliable and disinterested bystander.[3]  As the Officers explained in the opening brief (D.C. Br. 32), they were not compelled to accept at face value A.M.-F.'s assertion that Fishman "did nothing wrong." Ex. 5 at 14:41:57 to 14:41:59.  That does not mean, as Fishman claims, that the officers concluded she was "lying," Fishman Br. 47. Rather, officers reasonably do not expect children to accurately assess the wrongfulness of their parents' actions.

It is Fishman's narrow view of the facts that leads to his baseless parade of horribles.  He suggests that "any parent who puts an unwilling or misbehaving child into the car against their will can be detained and investigated by police for the 'offensive touching.'"  Fishman Br. 51.  But officers did not stop Fishman because he put a misbehaving child into a car.  Officers stopped Fishman because a 911 caller reported that he "grabbed" and "threw" a child—behavior so alarming that two bystanders stopped to intervene.  And a parent's ordinary handling of a misbehaving child would certainly not permit a *conviction* for assault, *contra* Fishman Br. 51, because a parent "charged with either assault or cruelty to children may claim the privilege of parental discipline," *Florence v. United States*, 906 A.2d 889, 893 (D.C.

---

[3]    In the opening brief, the officers set forth the facts showing the 911 caller was a reliable witness.  D.C. Br. 40-41.  Fishman does not challenge any of those facts.

2006) (describing the elements of the privilege).  But the legality of a brief detention depends only on whether the facts known to the officers created adequate suspicion, not on whether the suspect might have a valid defense at trial.[4]

### B.    At minimum, the officers were entitled to qualified immunity (Counts III and IV).

In their opening brief (at 43-46), the officers explained that even if Fishman proves a Fourth Amendment violation, the defense of qualified immunity applies because "a reasonable officer could have believed that [his action] was lawful, in light of clearly established law and the information the officers possessed." *Wilson v. Layne*, 526 U.S. 603, 615 (1999).  It is Fishman's "burden to show that the particular right in question—narrowly described to fit the factual pattern confronting the officers—was clearly established." *Dukore v. District of Columbia*, 799 F.3d 1137, 1145 (D.C. Cir. 2015) (internal citation omitted).  That is, he needs to "identify a case that put [the officers] on notice that [their] specific conduct was unlawful." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021).  No such factually apposite case

---

[4]    Fishman has conceded several points argued in the opening brief by failing to respond in his brief.  *See Herron v. Fannie Mae*, 861 F.3d 160, 165 (D.C. Cir. 2017).  Those include (1) that Fishman's detention did not exceed the boundaries of a *Terry* stop because the officers were diligent in pursuing the investigation to confirm or dispel their suspicions, and the use of handcuffs was reasonable under these circumstances, D.C. Br. 34-39, and (2) that the district court applied an incorrect subjective test when it entered judgment against Officer Todaro on the Fourth Amendment claims (Counts III and IV), D.C. Br. 46-48.

was identified below, as the district court acknowledged, JA 418, nor does Fishman identify one on appeal, *see* Fishman Br. 51-54.

Instead, Fishman argues that the "decisional law need not have supplied a precise formulation of the applicable constitutional standard in order to overcome an official's qualified immunity." Fishman Br. 52 (quoting *Barham v. Ramsey*, 434 F.3d 565, 572 (D.C. Cir. 2006)). According to Fishman, he "had a clearly established right to be free from detention once officers lacked '*a single reason* to hold [him] in handcuffs . . . under either a reasonable suspicion or probable cause standard.'" Fishman Br. 52-53 (emphasis and ellipsis in original) (quoting JA 418). In support, he cites cases that repeat the general standard to be free from unreasonable seizure. *See, e.g.*, Fishman Br. 53 ("The law was clearly established that 'an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop.'" (quoting *Ohio v. Robinette*, 519 U.S. 33, 50 n.8 (1996) (Stevens, J., dissenting)).

But "it is not enough to say that it is clearly established that police officers may not subject individuals to unreasonable . . . seizures." *Barham*, 434 F.3d at 572. The Supreme Court has "repeatedly told courts not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Rickard*, 572 U.S. at 779 (citation modified); *see Anderson v. Creighton*, 483 U.S.

635, 639-40 (1987) ("[T]he test of 'clearly established law'" cannot be applied at a high level of generality because plaintiffs could then "convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights."). And this requirement of specificity "is especially important in the Fourth Amendment context." *Wesby*, 583 U.S. at 64 (internal quotation marks omitted).

*Barham*, cited by Fishman (at 52), is a good example of Fishman's failure to engage at the correct level of factual specificity. The Court explained that a mass arrest that included "observers or passersby" of a protest was "devoid of probable cause" and denied qualified immunity because "[n]o reasonable officer . . . could have believed that probable cause existed to order the sudden arrest of *every* individual." *Barham*, 434 F.3d 565, 572-73 (D.C. Cir. 2006) (emphasis added). But Fishman was not a mere "observer[] or passe[r]by." The officers plainly had a reason for detaining him: a reliable eyewitness reported seeing Fishman commit an act of possible child abuse. The officers worked diligently to interview the potential victim, J.M.-F., and ended the stop once that interview was completed. Even if the officers were mistaken in their judgment that the circumstances were suspicious enough to justify Fishman's detention until completing J.M.-F.'s interview, they are entitled to qualified immunity. The "standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly

violate the law.'"  *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)).

Fishman is thus wrong that the officers' invocation of qualified immunity "is just a repackaged version of their merits argument."  Fishman Br. 51-52.  Their merits argument is that the facts known to the officers made Fishman's detention objectively reasonable.  Their qualified immunity argument is that *even if that is wrong*, it would not have been *clearly* wrong to an officer on the ground on O Street in February 2020.

## III.   The Common Law False Imprisonment Claim Fails For The Same Reasons As The Fourth Amendment Claims (Count VI).

In the opening brief, the District and the officers argued that this Court has jurisdiction to review the district court's disposition of Fishman's common law false arrest claim because it is inextricably intertwined with the district court's decision to deny the individual officers qualified immunity on the Fourth Amendment claims (at 48-49).  Fishman did not respond to that argument in his brief.

The District and officers then argued that the district court's decision on the common law claim should be reversed.  D.C. Br. 49-51.  Fishman concedes that this Court "should reverse the grant of summary judgment against Todaro on Count VI."  Fishman Br. 57.  He explains that he narrowed Count VI from being against all "Individual Officer Defendants," JA 50, to against the District of Columbia only in his opposition to the motion to dismiss, and the district court was thus mistaken in

22

treating the claim as against the officers, Fishman Br. 54 (citing Electronic Case Filing Record Document 23).  Therefore, this Court should reverse judgment against Officer Todaro and dismiss Count VI as to all the officers.

Fishman then asks this Court for something he never sought below: judgment against the District of Columbia on false arrest.  Fishman Br. 57.  Fishman's request fails for two reasons.  *First*, Fishman did not seek judgment against the District below.  He specifically sought judgment against Officer Todaro on the Fourth Amendment claims only, JA 78-92, and he waived any argument for summary judgment against the other defendants, conceding "other Defendants' liability will remain for trial," JA 92.

*Second*, even if he had sought judgment below, the cross-appeal rule precludes this Court from considering his request.  "[A]n appellate court may not alter a judgment to benefit a nonappealing party."  *Greenlaw v. United States*, 554 U.S. 237, 244-45 (2008).  Fishman did not cross appeal and thus cannot seek to "change or modify the district court's judgment to [his] benefit."  *Shatsky v. Pal. Liberation Org.*, 955 F.3d 1016, 1028 (D.C. Cir. 2020).

On the merits of the false arrest claim, Fishman focuses solely on Officer Todaro's actions, forfeiting any reliance on the actions of the other officers.  Fishman has thus necessarily limited his claim, because Officer Todaro's role was limited. Officer Todaro was at the front door for the first few minutes of the stop, but he was

uninvolved in the investigation thereafter.  He did not interview Fishman or his family.  *See* JA 233 (No. 21: Officer Todaro moved a police cruiser that had been parked in the middle of road), 234 (No. 24: Officer Todaro relieved another officer to stand with Fishman).  And he was not present when Officer Brady interviewed Macauley and J.M.-F.  *See* Ex. 7 (Officer Todaro's body-worn camera footage).

In those first few minutes, when Officer Todaro was at the front door, A.M.-F., unprompted, "came up [to the door] and started saying things."  JA 133-34 (Todaro: "I was a little shocked" because when "people come to the door, they'll ask us why we're there.  But this little girl knew exactly why we were there."); *see* Ex. 5 at 14:41:20 to 14:41:24.  Officer Todaro then tried to explain the 911 report to the two children and Macauley.  Ex. 5 at 14:41:28.  Macauley and J.M.-F. went back into the house, and A.M.-F. started to give an account to Officer Todaro: "My sister was misbehaving and she would not get into the car and come home."  Ex. 5 at 14:41:45 to 14:41:51.  "She was not listening," A.M.-F. continued, so "my dad had to put her over his shoulder and bring her into the car."  Ex. 5 at 14:41:50 to 14:41:59.  A.M.-F. also said: "He did nothing wrong."  Ex. 5 at 14:41:57 to 14:41:59.

Up to that point, Officer Todaro "had been told" that there had been a 911 call reporting "that a man . . . threw a child into a car."  JA 135.  He testified that "[A.M.-F.'s] explanation was consistent with what [he'd] been told," JA 135; in other words, it was consistent with a report that a child had been thrown into a car.

Given that consistency, he had no reason "[a]t th[at] point" to "believe that the girls were lying about what had happened." JA 135. And Officer Todaro testified that at that point, about 2:42 p.m., he believed there was reasonable suspicion for kidnapping. JA 137; Ex. 7 at 19:41:28 to 19:42:04. And rightly so. None of the officers had confirmed the identities of the adults or children.[5] General and parental kidnapping remained possible crimes even if A.M.-F was truthful in her description of Fishman putting J.M.-F. into the car.

The common law elements of false arrest match the elements of a constitutional claim for false arrest. *See* D.C. Br. 49-50. And for the reasons stated in Sections I.A. and I.B of the opening brief, Fishman's detention was lawful because it was supported by reasonable suspicion and probable cause.

But even if there were a mistaken judgment, the common law test provides a shield from liability when the officer believed, in good faith, that his conduct was lawful, and this belief was reasonable. *Scott v. District of Columbia*, 101 F.3d 748,

---

[5]     As the officers explained in their opening brief, reasonable suspicion of kidnapping dissipated "no earlier than when the officers confirmed the identities and relationships of everyone in the family, given that even a biological parent can engage in parental kidnapping." D.C. Br. 28. The earliest that the officers confirmed those identifies was around 2:51 p.m., when Macaulay identified herself and explained that Fishman was J.M.-F.'s father. Ex. 5 at 14:51:17 to 14:52:29. Fishman's focus on the first few minutes of the stop is even more curious because his own interview, on which he substantially relies, had not started. *See* Ex. 3 at 19:42:40 to 19:48:14.

754-55 (D.C. Cir. 1996).  The latter element matches the qualified immunity test. *District of Columbia v. Minor*, 740 A.2d 523, 531 (D.C. 1999).  To assess the former, "the trier of fact must consider the information that was available to the officer from the perspective of the arresting officer, not of the plaintiff." *Bradshaw v. District of Columbia*, 43 A.3d 318, 324 (D.C. 2012) (brackets omitted) (quoting *District of Columbia v. Murphy*, 631 A.2d 34, 36-37 & n.4 (D.C. 1993)).  The facts known to Officer Todaro fully support his "good faith belief" that there was reasonable suspicion or probable cause for kidnapping.  *Murphy*, 631 A.2d at 38.

## CONCLUSION

The Court should reverse and remand with instructions to enter judgment for appellants on Counts III, IV, and VI.

<div style="margin-left: 40%;">

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CAROLINE S. VAN ZILE
Solicitor General

ASHWIN P. PHATAK
Principal Deputy Solicitor General

GRAHAM E. PHILLIPS
Deputy Solicitor General

/s/ Lucy E. Pittman
LUCY E. PITTMAN
Senior Assistant Attorney General
Bar Number 483416
Office of the Solicitor General

Office of the Attorney General
400 6th Street, NW, Suite 8100
Washington, D.C. 20001
(202) 727-3881
(202) 741-5925 (fax)
lucy.pittman@dc.gov

</div>

November 2025

## CERTIFICATE OF COMPLIANCE

I certify that this reply brief complies with the type-volume limitation in Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,492 words, excluding exempted parts.  This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

/s/ Lucy E. Pittman
LUCY E. PITTMAN